U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR 21 2006

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DONNA MCCLURE | CIVIL ACTION NO. 05-0723 |
| VERSUS | JUDGE DRELL |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Donna McClure ("McClure") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for social security benefits. The issue to be decided is whether there is substantial evidence in the record to support the finding of the Administrative Law Judge ("ALJ") that McClure is not disabled.

McClure was born in 1942, and has a high school education. Her past relevant work was as a dispatcher. (R. 91.) McClure protectively filed an application for Disability Insurance Benefits ("DIB") on May 8, 1996. (R. 16.) The application was denied initially and on reconsideration. On January 23, 1998, a hearing was held before an Administrative Law Judge ("ALJ"). (R. 26-54.) A decision unfavorable to the claimant was rendered by the ALJ on January 27, 1999. (R. 11-22.) A request for review of that decision was denied by the Appeals Council on November 9, 2000. (R. 4-6.) The ALJ's decision became the final decision of the Commissioner. McClure filed a complaint with this Court on January

1

3, 2001, under Docket Number 01-0013. The district judge adopted the report and recommendation and issued a Judgment on June 28, 2002, reversing and vacating the Commissioner's decision remanding the case for further proceedings consistent with the Report and Recommendation. (R. 216-232.) On April 28, 2004, nearly two years after this Court's judgment, the Appeals Council remanded the case to the ALJ. Finally, a remand hearing was held on January 20, 2005 (R. 300-324), and another decision unfavorable to McClure was issued. The instant lawsuit ensued.

To qualify for disability insurance benefits, a claimant must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## SCOPE OF REVIEW

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C.

§405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. Crouchet v. Sullivan, 885 F.2d 202, 204 (5th Cir. 1989). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not

supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.

## ISSUES

McClure raises the following issues for review:

1. Whether the ALJ failed to accord proper weight to the treating physicians' opinions, resulting in an improper finding that McClure failed to meet or medically equal Listing 11.14.

2. Whether the ALJ erred in determining that McClure could perform past relevant work.

### Summary of Pertinent Facts

As set forth in the Report and Recommendation of April 25, 2002:

> "McClure was 55 years old at the time of her January 1998 administrative hearing, had a high school education, and had past relevant work experience as a dispatcher at an oil company (1983-1996) (Tr. pp. 32-33).
> McClure was seen at the Diagnostic Clinic of Houston for complaints of gradually increasing weakness and swelling in her feet and ankles in October 1993 (Tr. p. 134). An iron deficiency was suspected and McClure was prescribed an iron supplement (Tr. pp. 132, 134).
> In March 1996, McClure complained of numbness and burning in her feet for over one year, initially intermittent but currently constant (Tr. p. 122). McClure underwent nerve conduction studies with Dr. Reed B. Young, a neurologist, in March 1996. Dr. Young found some S-1 radiculopathy, decreased hearing, decreased touch, decreased temperature, vibration and pinprick in both legs to the calves, decreased temperature in the arms to the elbows, and decreased sensation in McClure's hands (Tr. pp. 123-124). X-rays of McClure's lumbar spine showed moderate to severe intervertebral disc degeneration at L4-5 (Tr. p. 117). Dr. Young diagnosed diagnosed "subacute sensory neuropathy"[1] (Tr. pp. 123-124) and ordered nerve

---

[1] Neuropathy is a nervous disease affecting the nervous system, especially a degenerative rather than inflammatory disease of a cranial or spinal nerve. The condition may be due to poor blood supply, trauma, lead poisoning, diabetes, etc. J.E. Schmidt, 4 Attorney's Dictionary of

4

conduction studies (Tr. p. 124).

Dr. Arsham Naalbandian, a neurologist, evaluated McClure in April 1996 (Tr. pp. 161-164). A neurological exam and nerve conduction studies revealed only subjective dysesthesias[2] involving mostly the lower extremities and to a lesser degree the upper extremities with essentially normal neurologic examination. There was a suggestion of sensory peripheral neuropathy from the nerve conduction study,[3] but no specific clinical findings to document it (Tr. pp. 145, 163, 165). However, Dr. Naalbandian found that McClure was unable to work (Tr. p. 145). In August 1996, further nerve conduction and EMG studies were conducted by Dr. Morteza Shamsnia, a neurologist, who diagnosed dysesthesias, parasthesias and neuropathy (Tr. pp. 175-176).

In January 1998, Dr. Riaz Chaudhry, an internist, summarized McClure's medical condition in a letter (Tr. p. 182), stating that McClure had been a patient of his for about a year and had been diagnosed with peripheral neuropathy of unknown etiology several years prior. Dr. Chaudhry stated that McClure has progressive numbness in both lower extremities with a wobbly, slow gait, motor weakness that had worsened in the past six to eight months, bilateral intermittent dysesthesias, and burning sensations in her hands and feet, possibly due to chemicals and insecticides used in agriculture. McClure also has decreased hearing for which she wears a hearing aid. In Dr. Chaudhry's opinion, McClure's ability to perform work, including housework, is limited due to moderate neuropathy; activities such as sitting, standing and walking are possible if she takes her time, but it is difficult for her to lift and handle heavy objects (Tr. p. 184).

---

Medicine, N-87 (2001).

[2] Dysesthesia is impairment of one of the senses, especially the sense of touch. J.E. Schmidt, 2 Attorney's Dictionary of Medicine, D-239 (2001).

[3] Peripheral neuropathy is a disease or disorder of a peripheral nerve, a nerve extending from the brain or spinal cord; pathological changes in the peripheral nervous system, caused by trauma or injury, cold, radiation, systemic lupus erythematosus, polyarteritis nodosa, scleroderma, sarcoidosis, rheumatoid arthritis, metabolic diseases (such as diabetes), infectious diseases (such as Lyme disease), microorganisms (such as leprosy), toxins (such as diphtheria), autoimmune reactions, various chemicals and drugs, nutritional deficiencies, and hypothyroidism; disease of peripheral nerves which is marked by partial or complete loss of sensation, weakness and atrophy (withering) of muscles, decreased deep reflexes, and vasomotor abnormalities. J.E. Schmidt, 4 Attorney's Dictionary of Medicine, p. P-187-188 (2001).

Dr. Paul A. Guillory, an otolaryngologist, conducted auditory brainstem response ("ABR") testing on McClure's hearing in July 1997 (Tr. p. 187). Brainstem responses were "well defined and repeatable at 90 and 75 decibels; Dr. Guillory found this APR was consistent with peripheral SNHL (sensorineural hearing loss)[4] (Tr. p. 187). In October 1997, Dr. Guillory measured McClure's hearing, with hearing aids, at 84% in the right ear at 70 decibels and 100 % in the left ear at 70 decibels (Tr. p. 186). The pure tone average was 40 in the right ear and 43 in the left ear, and the speech reception threshold was 40 in each ear (Tr. p. 186).

At her administrative hearing, McClure testified that she was 55 years old, right handed, and lived at home with her husband (Tr. p. 32).

McClure testified that, when she worked as a dispatcher, she was seated from 7:00 a.m. to 6:00 p.m. (Tr. p. 33), occasionally lifted a box of paper, operated a computer, fax machine, printer, calculator and telephone, filled out paperwork (station reports) all day, and supervised two other people (Tr. pp. 33-34). McClure testified that she stopped working in February 1996 due to pain, itching and burning, at first just in her feet and legs and later in the rest of her body, which decreased her energy and made it difficult for her to talk to people on the telephone or do the rest of her job (Tr. pp. 34-35). McClure testified that she would like to return to work but does not feel able (Tr. p. 34).

McClure testified that she drives once every one to two weeks (about 15 miles) without difficulty (Tr. p. 35). On a normal day, she gets up between 7:30 and 8:00 in the morning, drinks coffee, fixes her husband's breakfast if she feels able, sits and reads the newspaper as long as she is comfortable, then gets up and moves around (Tr. pp. 35-36). McClure sews sometimes, watches some TV, talks to her children on the telephone, and tries to take a nap during the day because she does not rest well at night (Tr. p. 36). McClure cooks a meal sometimes but her husband cleans up afterward; McClure's husband does all the vacuuming and laundry, and McClure makes the bed and dusts (Tr. p. 36). McClure testified that she planted some flowers last summer but her husband does the other yard work (Tr. p. 36). McClure occasionally visits friends or goes shopping, but she does not go anywhere else because her physical condition makes her irritable (Tr. p. 37). McClure testified that she goes to bed

---

[4] A sensorineural hearing impairment is an impairment of hearing caused by a disorder of the nerves or structures of the inner ear. J.E. Schmidt, 5 Attorney's Dictionary of Medicine, p. S-106 (2001).

about 10:30 or 11:00 p.m. (Tr. p. 37). McClure testified that her appetite is pretty good (Tr. p. 37).

McClure testified that her nerves have been damaged, but the cause is unknown and there is no treatment for it (Tr. p. 38). McClure said it burns, stings and sometimes "kind of vibrates" from her toes up, and has gotten increasingly worse in the last two years (Tr. p. 38). Sometimes McClure has difficulty walking or standing (Tr. p. 38). McClure's upper extremities started being affected in about July 1996, with burning and stinging, and occasional difficulty using her hands and arms (Tr. p. 38). McClure has also suffered hearing loss due to nerve damage which has necessitated the use of hearing aids which were prescribed by Dr. Guillory (Tr. pp. 39, 41-42). McClure testified this has affected her ability to talk on the telephone; the hearing aids pick up other noises so McClure cannot hear over the telephone if the connection is bad (Tr. p. 39). McClure testified that her job as a dispatcher involved taking reports of meter readings from several different stations every day; some of the stations had bad telephone connections which made it difficult to hear the numbers correctly (Tr. p. 40).

McClure further testified that she was taking only one medication which was helping her a lot and which did not cause any adverse side effects (Tr. pp. 43-44).

McClure testified that she can usually walk around a grocery store or Wal-Mart with a buggy, can be on her feet 10 to 30 minutes at a time before she has to rest, can stay on her feet up to a total of 1½ hours in an eight hour work day if she can alternate sitting and standing and take short breaks every couple of hours, and can sit for up to 30 minutes. McClure has trouble going up and down steps, bending or stooping, and reaching with either arm (more with the left arm than the right) (Tr. pp. 44-45). McClure testified that, since the previous year, she can only lift her left arm about shoulder height (Tr. p. 45). McClure also testified she can lift or carry something as heavy as her purse if there is a strap on it, up to 1/3 to 2/3 of an eight hour day (Tr. p. 46). McClure has difficulty with thinking, memory and concentration, and has trouble with temperature extremes (Tr. p. 46).

McClure's husband, Doug McClure ("Doug") testified that his wife's problems and condition seemed more pronounced to him than her testimony indicated; Doug said his wife "was a ball of fire and now she's just a barely glowing ember." Doug testified that McClure now suffers from hesitation and confusion that she never had before, her sleeping patterns have become horrible (Tr. p. 48), she used to be strong and now is "horribly weak," she has slowed down, and her entire

7

personality has changed (Tr. p. 49). Doug further testified that McClure's ability to walk or stand is far more limited now than it was (Tr. p. 49), she has trouble reaching accurately for things with her left arm, often knocking things down, and now almost never uses her left arm, she doesn't do very much cooking, housework or yard work, has trouble sewing, and began having hearing problems about six months ago that have rapidly worsened (Tr. p. 50). Doug also stated that McClure's eyesight had worsened in the past year (Tr. p. 51)."

(01-CV-0013; Doc. #9, p. 3-9.)

## LAW AND ANALYSIS

Issue No. 1: Whether the ALJ failed to accord proper weight to the treating physicians' opinions, resulting in an improper finding that McClure failed to meet or medically equal Listing 11.14.

McClure's first argument in the instant matter is the same argument presented in the prior complaint. Specifically, McClure claims that the ALJ again failed to accord proper weight to the treating physicians' opinions and, as a result, failed to find McClure's impairments met or medically equaled Listing 11.14.

A claimant has the burden of proving that her condition meets or medically equals an impairment listed in Appendix 1. <u>Sullivan v. Zebley</u>, 493 U.S. 521 (1990). For a claimant to show that her impairment meets/equals a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. <u>Id.</u>

Where the impairment is severe, the Commissioner must determine whether the impairment is so severe that the claimant

will be presumed to be disabled. This determination is made by comparing the impairment to a specific Listing of Impairments in the SSA regulations. See 20 C.F.R. § 404, Subpart P, Appendix 1. If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. See Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987).

Listing 11.14, Peripheral Neuropathies, states "[w]ith disorganization of motor function as described in 11.04B, in spite of prescribed treatment." Listing 11.04B states, "[s]ignificant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (11.00C)." Listing 11.00C defines persistent disorganization of motor function as "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or *peripheral nerve dysfunction*) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. *The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.*" (Emphasis added.) Neuropathy has a progressive nature and develops slowly, over months or years, often beginning with sensory abnormalities in the

lower extremities. See Butts v. Bowen, 1989 WL 36409, *5 n.4 (N.D.Ill. 1989), citing Merck Manual, p. 1445 (15th ed. 1987).

When this matter was previously before the Court, the undersigned recommended and the district judge ordered that the Commissioner issue a reasoned determination of whether McClure meets Listing 11.14. (01-CV-0013; Doc. #9, p.13.) On remand, the ALJ stated that McClure did not meet Listing 11.14 because "she does not have disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." (R. 209.) The ALJ recited one of the requirements under listing 11.14 and failed, again, to explain why McClure did not meet the listing, or why her treating physicians' opinions should be rejected.

The Commissioner argues that Listing 11.14 was not met because "none of the doctor's [sic] documented significant and persistent disturbance of motor functioning." (Doc. #9, p.5.) Specifically, the Commissioner argues that the treating physicians never noted a persistent significant interference of McClure's ability to use her hands, arms, or legs. However, Dr. Wilson diagnosed McClure with **peripheral neuropathy** and noted that McClure had "much difficulty in carrying out her job as an office worker secondary to the discomfort from the **paresthesias and feeling of fatigue.**" (R. 298-299, emphasis added.) Dr. Naalbandian opined that, based on her clinical presentation and her symptomatology, McClure would not be

able to work. (R. 145.) Finally, in 1998, Dr. Chaudhry noted that McClure had suffered from peripheral neuropahty of unknown etiology for several years. (R. 182.) He also noted that McClure had **progressive numbness in both lower extremities with a wobbly, slow gait, motor weakness that had worsened in the past six to eight months, and bilateral dysesthesias.**

The ALJ should have provided reasons why McClure did not meet the listing. However, even after a second opportunity on remand, the ALJ did not provide **any** reasons why McClure did not meet the listing.

Furthermore, the ALJ did not provide reasons to reject the opinions of McClure's treating physicians. It is well established that, "unless there is good cause shown to the contrary, the testimony of a treating physician must be accorded substantial weight." Loya v. Heckler, 707 F.2d 211, 214 (5th Cir. 1983), quoting Fruge v. Harris, 631 F.2d 1244, 1246 (5th Cir. 1980) (citations omitted). Good cause for rejecting a treating physician's opinion is generally based on contrary, objective medical evidence and/or opinions of other treating physicians. See Milam v. Bowen, 782 F.2d 1284, 1287 (5th Cir. 1986); Frankenfield v. Bowen, 861 F.2d 405, 408 (3rd Cir. 1988). The ALJ may not simply substitute his or her own lay opinion for that of the treating physician. See Spencer v. Apfel, 1998 U.S. Dist. LEXIS 3343, 7-8 (E.D. La. 1998); Arrigo v. Heckler, 604 F. Supp. 401, 403

(E.D. Pa. 1985).

Here, the ALJ noted that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." (R. 209.) However, the ALJ offers nothing to contradict the treating physician's diagnosis of peripheral neuropathy, which is not an opinion on an issue reserved to the Commissioner. Further, Dr. Gibson opined that McClure's condition made it difficult to carry out her job as an office worker; he did not make a legal conclusion that McClure was "disabled." Similarly, the ALJ cites no evidence to contradict Dr. Chaudhry's diagnosis of peripheral neuropathy or the doctor's observations of leg weakness and ataxic gait. (R. 209.) The opinions of McClure's treating physicians are not contradicted by substantial evidence in the record. The ALJ did not establish proper grounds for rejecting the opinion of McClure's treating physicians.

A court may reverse the decision of the Commissioner and remand the case with instructions for the Commissioner to grant a claimant's application and award her benefits. 42 U.S.C. § 405(g); Poe v. Commissioner, 2003 U.S. Dist. LEXIS 21307 (N.D. Tex. Sept. 23, 2003); McQueen v. Apfel, 168 F.3d 152, 156 (5th Cir. 1999); Randall v. Sullivan, 956 F.2d 105, 109 (5th Cir. 1992). Reversal with directions to award benefits is proper when "the Secretary has already considered the essential evidence and it is clear that the

cumulative effect of the evidence establishes disability without any doubt." Id., citing Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The Commissioner has already considered the essential evidence in this case; and, it is clear that McClure is disabled. Therefore, the case should be remanded for entry of a finding of disability and for a calculation of disability insurance benefits from the date of the protective filing, which was May 8, 1996.

The undersigned notes that McClure's application has been pending for **ten years**. Most notably, it took **two years** for the Appeals Council to remand the case to the ALJ after a Judgment ordering same was issued by this Court on June 28, 2002. (Doc. #10, 01-CV-0013.) Therefore, the undersigned recommends that the Commissioner be urged to expedite the proceedings on remand. See McQueen v. Apfel, 168 F.3d 152 n.7 (5th Cir. 1999)("I would urge the Commissioner to expedite his consideration, giving final resolution of McQueen's application highest priority."); Parks v. Harris, 614 F.2d 83, 84 (5th Cir. 1980)("Because of the lengthy history of this case as it has wound its way through administrative channels and judicial appeals, we urge the Secretary to expedite reconsideration of this matter, giving final resolution of this claim highest priority."); Tejada v. Apfel, 167 F.3d 770 (2d Cir. 1999)("Since Ms. Tejada's application for benefits has been pending for more than five years, we urge the Commissioner to expedite the

proceedings on remand."); Pollard v. Halter, 377 F.3d 183 (2d Cir. 2004)("In light of significant delays in this case... we think it best that the Commissioner disposes of this case as expeditiously as possible."); Russell v. Commissioner, 32 Fed. Appx. 737 (6th Cir. 2002)("We regret that Russell's proceedings will be further prolonged, and we hope, in light of the fact that it has been more than seven years since Russell filed her initial application, that the hearing will be as expeditious as possible.")

## Conclusion

Based on the foregoing discussion, substantial evidence does not support the conclusions of the Commissioner, and the decision is incorrect as a matter of law. Therefore, IT IS RECOMMENDED that McClure's appeal be GRANTED, that the decision of the Commissioner be REVERSED AND VACATED, and the case be REMANDED for the entry of a finding of disability and for a calculation of disability insurance benefits due McClure from May 8, 1996. Due to the lengthy history of this case and the fact that it took two years for the case to reach the ALJ after the last remand order from this Court, it is RECOMMENDED that the finding of disability and calculation of benefits be completed **within ninety (90) days**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

14

party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 18th day of April, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE